

FILED

SEP 25 2019

U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>█████████<br>(Counts 1 and 4)<br><br>and<br><br>MARVIN DUMONT,<br>(Counts 1, 2, and 3)<br><br>*Defendants.* | Criminal No. 1:19-CR-276<br><br>Count 1: 18 U.S.C. § 1349<br>(Conspiracy to Commit Wire Fraud)<br><br>Count 2: 18 U.S.C. § 1343<br>(Wire Fraud)<br><br>Count 3-4: 18 U.S.C. § 1028A<br>(Aggravated Identity Theft)<br><br>Forfeiture Notice<br><br>**UNDER SEAL** |

## INDICTMENT

September 2019 Term – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment:

1. The term "carding" refers to criminal activities related to payment card fraud, identity theft, and other related criminal activity. Individuals engaged in carding activities, or "carders," may use equipment, such as a magnetic stripe reader/writer and a card embosser, to encode stolen payment card information that belongs to an actual person onto a physical payment card. Likewise, carders may use stolen payment card information to engage in online purchases and may utilize electronic devices on which stolen payment card information is stored in order to make fraudulent purchases at retail stores.

2.  The term "stolen payment card number" or "stolen payment card information" includes information—such as the 15- to 18-digit card number typically found on the face of a physical credit or debit card that is known as the "primary account number" (PAN), a card's expiration date, and a card's security code—that does not belong to the person who obtained, possessed, and used it.

3.  ICQ and Telegram are instant messaging platforms.

4.  The use of an American Express payment card to engage in a transaction at a retail store causes the transmission of a writing, sign, signal picture, and sound by means of wire communication from the location of the store at which the transaction was conducted to American Express's servers located in Arizona.

5.  The term "means of identification" refers to any name or number that might be used, alone or in conjunction with any other information, to identify a specific individual, and includes payment card numbers.

6.  MERLIN LAGUERRE is an individual who was convicted of wire fraud, wire fraud conspiracy, and aggravated identity theft in the Eastern District of Virginia in 2019. As part of his guilty plea, LAGUERRE admitted to a number of facts relevant to this Indictment, including his ownership of certain email accounts he used to communicate with his co-conspirators, as well as details concerning the crimes he committed in concert with others.

## COUNT ONE
### (Conspiracy to Commit Wire Fraud – 18 U.S.C. § 1349)

THE GRAND JURY FURTHER CHARGES THAT:

7. The factual allegations in Paragraphs 1 through 6 are re-alleged and incorporated as if fully set forth here.

*The Conspiracy and Its Objects*

8. From at least in or around June 2016, and continuing through at least in or around June 2019, in the Eastern District of Virginia and elsewhere, Defendants ▮▮▮▮▮ and **MARVIN DUMONT**, together with MERLIN LAGUERRE, as well as others known and unknown to the Grand Jury (hereinafter, "the co-conspirators"), knowingly and intentionally conspired to commit wire fraud, that is to devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, and attempting to do so, transmitted and caused to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, U.S. Code, Sections 1343.

9. In particular, one of the goals of the conspiracy was to make a financial profit by trafficking in and using stolen payment card information to make fraudulent purchases.

10. Another goal of the conspiracy was to fraudulently purchase goods and services using stolen payment card information.

*Manner and Means of Conspiracy*

11. ▓▓▓▓▓▓▓ DUMONT, LAGUERRE, and their co-conspirators, for purposes of enriching themselves, employed various manners and means in furtherance of the conspiracy, including, but not limited to the following:

   a. It was part of the conspiracy that the co-conspirators obtained and used, or obtained with the intention of using, more than 100,000 stolen payment card numbers, as well as stolen personally identifiable information belonging to some of the account holders associated with the stolen payment card numbers.

   b. It further was part of the conspiracy that, at times, the co-conspirators trafficked in stolen payment card information, for example, exchanging stolen payment card numbers via email and instant message communications, such as ICQ and Telegram messages.

   c. It further was part of the conspiracy that, at times, the co-conspirators used or attempted to use stolen payment card information to make fraudulent purchases at retail stores located within the Eastern District of Virginia and elsewhere, either by encoding stolen payment card information onto a physical card or by completing a transaction by associating stolen payment card information with an electronic device capable of transmitting radio-frequency identifications (RFID) or near field communication (NFC) and holding that device in close proximity to a point-of-sale terminal capable of accepting RFID or NFC transmissions.

   d. It further was part of the conspiracy that, at times, co-conspirators communicated via text message, instant message (such as ICQ and Telegram), and email to discuss the use of stolen payment card information.

   e. It further was part of the conspiracy that, at times, co-conspirators traveled to different retail stores to make fraudulent purchases so as to minimize the risk of detection.

*Overt Acts*

12. In furtherance of the conspiracy, and to accomplish the objects thereof, ████, DUMONT, LAGUERRE, and their co-conspirators committed within the Eastern District of Virginia and elsewhere the following overt acts, among others:

   a. On or about October 27, 2016, LAGUERRE used an email account that he controlled to send 2 emails to DUMONT that, in total, contained approximately 146 stolen payment card numbers.

   b. On or about January 29, 2018, LAGUERRE used ICQ to send 6 messages to DUMONT that, in total, contained approximately 23 stolen payment card numbers.

   c. On or about January 30, 2018, LAGUERRE sent a text message to a person who will be identified herein as "Individual-2." The text message contained a link to a particular carding website, that is, a website through which users can purchase stolen payment card information. Later that day, Individual-2 sent a text message to LAGUERRE that read, "I need you to link me to how to check the bins the way we did it back in Georgia." By "bins," Individual-2 meant "Bank Identification Number," or BIN, which refers to the first (typically six) digits of a PAN that identify the issuer of the card. Then, on or about February 2, 2018, Individual-2 sent LAGUERRE a text message with a link to a different carding website through which users can purchase and sell stolen personally identifiable information, including stolen payment card information, as well as login credentials for the site.

   d. On or about February 15, 2018, DUMONT used ICQ to send a message to LAGUERRE that contained a stolen payment card number, the name of an individual, and a mailing address. LAGUERRE then asked, "How much money left in the coins[?]" The following communications were then exchanged (all errors in original):

5

| Sender | Message |
|---|---|
| LAGUERRE: | That shit D |
| DUMONT: | Wtf |
| LAGUERRE: | Yeah bro |
| DUMONT: | light like a buck and change |
| DUMONT: | Hold on |
| LAGUERRE: | light |
| LAGUERRE: | 535878 |
| LAGUERRE: | C if they got this bin |

DUMONT subsequently sent another message to LAGUERRE that contained a new payment card number beginning with the 535878 BIN, as well as a name. Thereafter, the following communications were exchange (all errors in original):

| Sender | Message |
|---|---|
| DUMONT: | Let me know bro |
| LAGUERRE: | Ok |
| DUMONT: | Its good |
| LAGUERRE: | Hold on |

e. On or about February 19, 2018, **DUMONT** used ICQ to send three messages to LAGUERRE, and each message contained a stolen payment card number. The last message also contained a name, address, expiration date, and a security code.

f. As part of his guilty plea, LAGUERRE admitted that, on or about June 20, 2018, he made fraudulent purchases at four different Best Buy stores: (i) a Best Buy store located in Lanham, Maryland, where he used an American Express payment card ending in 1005 to

6

purchase, without authorization, $5,935.98 worth of merchandise; (ii) a Best Buy store located in Arlington, Virginia, which is within the Eastern District of Virginia, where he used an American Express payment card ending in 1004 to purchase, without authorization, approximately $8,967.99 worth of merchandise; (iii) a Best Buy store located in Woodbridge, Virginia, which is within the Eastern District of Virginia, where he used an American Express payment card ending in 1004 to purchase, without authorization, $11,916.38 worth of merchandise; and (iv) a Best Buy store located in Stafford, Virginia, which is within the Eastern District of Virginia, where he used an American Express payment card ending in 1004 to purchase, without authorization, $8,000.00 worth of merchandise.

  g. As part of his guilty plea, LAGUERRE admitted that, on or about June 23, 2018, he traveled to a Best Buy store located in Mechanicsville, Virginia, which is within the Eastern District of Virginia, and used an American Express payment card ending in 1003 to purchase, without authorization, $14,475.89 worth of merchandise.

  h. On or about June 29, 2018, a co-conspirator traveled to a Best Buy store located in Virginia Beach, Virginia, which is within the Eastern District of Virginia, and used an American Express card ending in 1002 (which belonged to a person identified herein as "H.C.") to purchase, without authorization, $6,001.94 worth of merchandise. Approximately three hours later, **DUMONT** went into a different Best Buy store in Virginia Beach, Virginia, and used H.C.'s American Express card ending in 1002 to purchase, without authorization, $4,736.34 worth of merchandise.

  i. As part of his guilty plea, LAGUERRE admitted that, on or about July 11, 2018, LAGUERRE traveled to a Best Buy store located in Denver, Colorado, and used an American Express payment card ending in 1009 to purchase $2,583.58 worth of merchandise.

j.  On or about July 11, 2018, approximately 40 minutes after LAGUERRE's fraudulent purchase at the Best Buy store in Denver, Colorado, described above, ▇▇▇ went into the same Best Buy store and used the same American Express payment card ending in 1009, which belonged to an individual identified as "T.B.," to purchase $4,898.03 worth of merchandise.

k.  On or about July 19, 2018, LAGUERRE used Telegram to send to DUMONT a message that contained a stolen payment card number, an individual's name, a mailing address, an expiration date, and a security code.

l.  On or about July 21, 2018, LAGUERRE used Telegram to send to ▇▇▇ a messaging that contained a stolen payment card number ending in 5432. Later that day, LAGUERRE sent another Telegram message to ▇▇▇ that contained a stolen payment card number ending in 6436 and the following text: "That's 4 u." ▇▇▇ responded, "Good looks Brody," and subsequently sent another message containing a screenshot of a website. The following communications were then exchanged (all errors in original):

| Sender | Message |
| --- | --- |
| ▇▇▇ | That's what popped up for him but it's two ss and dob's so they're not too sure |
| LAGUERRE: | OK immature check it out now |
| ▇▇▇ | Copy try been verified real quick to find the correct bday |
| LAGUERRE: | Got it its the first one |
| LAGUERRE: | That's what I did |

m.  On or about August 11, 2018, ▇▇▇ sent a Telegram message to LAGUERRE that contained a payment card number ending in 7663.

8

n. As part of his guilty plea, LAGUERRE admitted that, on or about September 2, 2018, he traveled to a hotel in Henrico County, Virginia, within the Eastern District of Virginia, and used a stolen payment card to pay for a hotel room.

o. As part of his guilty plea, LAGUERRE admitted that, until September 6, 2018, he possessed a magnetic stripe reader/writer, which he used prior to September 6, 2018, to encode stolen payment card information onto physical cards.

(All in violation of Title 18, U.S. Code, Sections 1349.)

## COUNT TWO
(Wire Fraud – 18 U.S.C. § 1343)

THE GRAND JURY FURTHER CHARGES THAT:

13. From at least in or around June 2016 through at least in or around June 2019, in the Eastern District of Virginia and elsewhere, Defendant **MARVIN DUMONT** did knowingly devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, and attempting to do so, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, U.S. Code, Section 1343.

*The Scheme and Artifice*

14. The scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises is described in Paragraph 11 of Count 1 of this Indictment, which is re-alleged and incorporated in this Count as if fully set forth herein.

*Executions of the Scheme and Artifice*

15. On or about June 29, 2018, within the Eastern District of Virginia and elsewhere, for the purpose of executing the above-described scheme and artifice and attempting to do so, **DUMONT** knowingly caused the transmission of a writing, sign, signal, picture, and sound by means of a wire communication in interstate and foreign commerce; to wit, **DUMONT** went into a Best Buy store located in Virginia Beach, Virginia, within the Eastern District of Virginia, and used an American Express card ending in 1002 (which belonged to a person identified herein as "H.C.") to purchase, without authorization, $4,736.34 worth of merchandise, which caused a

writing, sign, signal, picture, and sound to be transmitted from the Eastern District of Virginia to Arizona.

(All in violation of Title 18, U.S. Code, Section 1343 and 2.)

## COUNT THREE
(Aggravated Identity Theft – 18 U.S.C. § 1028A)

THE GRAND JURY FURTHER CHARGES THAT:

16. On or about June 29, 2018, in the Eastern District of Virginia and elsewhere, Defendant **MARVIN DUMONT** did knowingly possess, transfer, and use, without lawful authority, a means of identification of another person—to wit, H.C.'s American Express payment card ending in 1002—during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c)—to wit, wire fraud, in violation of 18 U.S.C. § 1343, as alleged in Count 2—knowing that the means of identification belonged to another actual person.

(All in violation of Title 18, U.S. Code, Sections 1028A, 1343, and 2.)

## COUNT FOUR
(Aggravated Identity Theft – 18 U.S.C. § 1028A)

THE GRAND JURY FURTHER CHARGES THAT:

17. On or about July 11, 2018, in the Eastern District of Virginia and elsewhere, Defendant ███ did knowingly possess, transfer, and use, without lawful authority, a means of identification of another person—to wit T.B.'s American Express payment card ending in 1009—during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c)—to wit wire fraud conspiracy, in violation of 18 U.S.C. § 1349, as alleged in Count 1—knowing that the means of identification belonged to another actual person.

(All in violation of Title 18, U.S. Code, Sections 1028A, 1349, and 2.)

## NOTICE OF FORFEITURE

The Grand Jury finds that there is probable cause that the property described in this NOTICE OF FORFEITURE is subject to forfeiture pursuant to the statutes described herein.

18. Defendants ▓▓▓▓▓▓▓▓▓▓ and MARVIN DUMONT are hereby notified, pursuant to Federal Rule of Criminal Procedure 32.2(a), that upon conviction of the offense set forth in Counts 1, 2, 3, and 4 of the Indictment, they shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 981(a)(1)(D), and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

19. Pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), ▓▓▓▓▓ and DUMONT shall forfeit substitute property, if, by any act or omission of ▓▓▓▓▓ and DUMONT, the property referenced in Paragraph 18 cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(All in accordance with Title 18, U.S. Code, Sections 981(a)(1)(C) and (D); Title 21, U.S. Code, Section 853(p); Title 28, U.S. Code, Section 2461(c); and Fed. R. Crim. P. 32.2.)

A TRUE BILL:   Pursuant to the E-Government Act,
The original of this page has been filed
under seal in the Clerk's Office

_____
Foreperson of the Grand Jury

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

_____
Laura Fong
Alexander P. Berrang
Assistant United States Attorneys

14